UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ZAKITA DILLON                                                CIVIL ACTION

VERSUS                                                      NO. 18-967

JEFFERSON PARISH, ET AL.                           DIVISION "3"

## ORDER

On May 9, 2018, the Motion for Partial Dismissal [Doc. #5], Defendant John Dumas' Rule 12(b)(6) Motion to Dismiss [Doc. #8], and the Motion for Partial Dismissal of Plaintiff's First Amended Complaint [Doc. #17] came on for oral hearing before the undersigned. Present were Jack Truitt and Lou Anne Milliman on behalf of plaintiffs and Thomas Anzelmo, Christopher James-Lomax, and Elizabeth Clinton on behalf of defendants. After the oral hearing, the Court took the motions under advisement. Having reviewed the extensive pleadings and the case law, the Court rules as follows.

### I. Background

Plaintiff Zakita Dillon was an employee of the Parish of Jefferson ("the Parish"), working as an Executive Assistant for the Capital Projects Division of the Public Works Department. [Doc. #1 at ¶ 4]. Defendant John Dumas was also an employee of the Parish, initially in the position of Human Resource Assistant Director, and later promoted to the position of Personnel Director. [*Id.* at ¶ 6]. As Personnel Director, Dumas had the power to promote, reprimand, and remove administrative officers and employees of the parish responsible to him. [*Id.*].

Dumas, in his capacity as Human Resource Assistant Director and Personnel Director, often had inappropriate interactions and communications with Dillon, which began to make her uncomfortable. [*Id.* at ¶ 7]. These communications included Dumas calling Dillon and asking what

she was wearing and telling her that he saw her walk to her car and that he loved the dress she wore. [*Id.*].

After being promoted to Personnel Director, Dumas was given an office on the West Bank of Jefferson Parish. At that time, his interactions became more aggressive, informing Dillon that the promotion was bittersweet because he would not be able to see her "pretty face" every day. [*Id.*]. He also began to call her into his office when he traveled from the West Bank to the East Bank office locations. [*Id.*]. When she went into his office, he would hug her closely, which seemed innocent at first but progressed over time into an uncomfortable situation. [*Id.*]. Also, on one occasion, when Dillon had been called into Dumas's office, she sat down across from his desk in a chair and they began a casual conversation. [*Id.*]. Dumas then made a motion for Dillon to open her legs, and, when Dillon asked him what he was doing, he replied: "Do you have on underwear? I could just see me putting you on top of this desk. I just wanted to take a peep." [*Id.*]. Dillon jumped up and told him that she could not believe him and that she had tried to be nice about all of this and ignore his advances, but this was too much. [*Id.*]. Dillon consistently denied Dumas' sexual advances and attempted to limit any contact with him. [*Id.* at ¶ 8].

In April of 2015, plaintiff applied for a work study program, through the Jefferson Parish Personnel Department. [*Id.* at ¶ 9]. This application was filed during the time period that she was denying the sexual advances of Dumas. [*Id.*]. The complaint alleges that it took almost fourteen months before Dillon's work study determination was made available to her, and it was denied in or about June of 2016. [*Id.*].

Dillon contacted Dumas concerning the lengthy time of evaluation for her work study, the denial, and inquired into the appeal process. [*Id.* at ¶ 10]. At that time, she was informed that there was no appeal process. [*Id.*]. Dillon then contacted her Councilman, Mark D. Spears, Jr., to inquire about an appeal process. [*Id.*]. Following a meeting between Spears and Dumas, Dillon received notice that personnel had received her appeal. [*Id.*].

After receipt of the notice of appeal, Dillon was forced to again contact Dumas, in his capacity as Personnel Director, to inquire as to what documents and information would be needed from her in order to complete the appeal. [*Id.* at ¶11]. She also asked Dumas if she should attend. Dumas indicated that she should just forward any documents that she wanted reviewed, and her attendance was not necessary. [*Id.*]. She later found out that she could have and should have attended the Board Meeting when her appeal was addressed. [*Id.*].

On or about September 26, 2016, Dillon filed a grievance with Jefferson Parish in which she outlined the misconduct of Dumas. [*Id.* at ¶ 12]. Dillon avers that she availed herself of the policies, procedures, and mediation process of the Equal Employment Opportunity Commission ("EEOC") without success. [*Id.* at ¶ 19]. Dillon was issued a Right to Sue Letter by the U.S. Department of Justice Civil Rights Division on or about November 27, 2017. [*Id.*].

Dillon sued Jefferson Parish and Dumas on February 1, 2018. The lawsuit alleges that defendants, the Parish, and Dumas, were acting under color of state and municipal law and were cloaked with the authority of the State of Louisiana and the Parish for purposes of 42 U.S.C. § 1983 when taking the actions against her. [*Id.* at ¶ 13]. The complaint alleges that defendants are liable for retaliation. [*Id.* at ¶¶ 14-15]. The complaint also alleges that this hostile work

3

environment violated the Civil Rights Act of 1964, §§ 701 *et seq.*, 703(a)(1), as amended, 42 U.S.C. §§ 2000e *et seq.*, 2000e-2(a)(1). [*Id.* ¶ 16], and applicable Louisiana law.

Dillon alleges that she was acting within the requirements of her employment when she was retaliated against for denying the sexual advances of her supervisor, Dumas, as well as discriminated against because of her race and gender in violation of Title VII. Dillon alleges that Dumas is liable to her for compensatory damages, actual damages, emotional distress damages, attorney's fees, loss of earnings, punitive damages, and costs.

## II.  Law and Analysis

### A.  Standard

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a facial challenge to a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003); *see also* 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3522 (3d ed. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

### B. The Motions to Dismiss

The Parish filed two motions for partial dismissal, and Dumas filed one in his individual capacity. In each, both defendants raise some of the same arguments, and yet each raises differing arguments with regard to each. This Court will address only those arguments necessary to resolve the motions.

In both of its motions for partial dismissal, the Parish contends that Dillon's claims under Title VII and Louisiana Revised Statute § 23:1332 are untimely. The Parish notes that in her amended petition, filed after the Parish filed its first motion to dismiss, the latest date about which Dillon complains of sexual/gender harassment and a hostile work environment is April 2016, and Dillon did not file her complaint with the Equal Employment Opportunity Commission ("EEOC") until March 20, 2017 – or 324 days after the alleged wrongful employment practice. Dillon counters by arguing that the last act about which she complains occurred in September 2016, when

she filed her grievance with the Parish. Thus, she contends, her complaint is timely because she filed her grievance before March 28, 2017, which would have been the 300-day deadline to file with the EEOC.

In a deferral state like Louisiana, an aggrieved individual must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *Conner v. La. Dep't of Health & Hosps.*, 247 Fed. Appx. 480, 481 (5th Cir. 2007). The individual must then file suit within 90 days of receiving a notice-of-right-to-sue from the EEOC. *Firle v. Miss. State Dep't of Educ.*, 762 F.2d 487, 488 (5th Cir. 1985).

In her amended complaint, the last action that can be considered sexual harassment occurred in March or April 2016. While no particular date is specified, the Court will give Dillon the benefit of the doubt and consider April 30, 2016 as the date from which to run the prescriptive period. Given that date, Dillon had to file her grievance with the EEOC no later than February 24, 2017. Dillon filed her grievance with the EEOC on March 20, 2017, which renders untimely her claims for gender and race discrimination and sexual harassment under Title VII and corresponding state law.

The question then becomes whether the acts about which Dillon complains after April 2016 interrupt prescription or even constitute acts of discrimination that contribute to a hostile work environment. The Parish contends that the continuing tort doctrine does not save Dillon's Title VII and state-law claims from untimeliness. It argues that the denial of Dillon's work-study program and the appeal are discrete acts that are not related to her claims of a hostile work environment. Citing Fifth Circuit case law and noting the time gap between the alleged acts of sexual harassment

and the denial of the appeal, the Parish maintains that the temporal gap is insufficient to demonstrate that the acts complained of are related.

The Court finds that the actions that occurred after April 2016 do not constitute sexual harassment. The application and appeal process are wholly unrelated to the claims for hostile work environment. That Dillon filed a grievance with the Parish in September 2016 is of no moment: That is not an act by the Parish or Dumas that could constitute sexual harassment but an act done by Dillon for herself. Filing a grievance with the EEOC does not constitute an act of sexual harassment, so that date cannot interrupt prescription.

The Parish and Dumas also maintain that Dillon's claim under 42 U.S.C. § 1983 is untimely. Although 42 U.S.C. §§ 1983 and 1985 contain no express limitations period, courts apply the statute of limitations for the analogous state law action – here, the one-year prescriptive period for Louisiana torts. *See Schaefer v. Peralta*, Civ. A. No. 16-17784, 2017 WL 6055153, at *3 (E.D. La. Dec. 7, 2017) (citing *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987)). Citing the last date alleged in Dillon's complaint – September 22, 2016, or the day that she filed a grievance with it, the Parish and Dumas contend that Dillon's complaint – filed on February 1, 2018 – is untimely. To counter, Dillon maintains that the Court should consider the filing of her EEOC charge on March 20, 2017 as the date from which to gauge timeliness because the continuing tort doctrine applies to Section 1983. The Parish notes that Dillon has alleged no date in the first amended complaint between February 1, 2017 and February 1, 2018, the date on which she filed her complaint. It contends that Dillon has alleged no conduct on the part of the Parish

7

after September 22, 2016, and Dumas argues that she does not allege that he even involved himself in her application for the work-study program or the denial of her appeal.

The filing of an EEOC charge is necessary to proceed on Title VII claims – not Section 1983 claims. Dillon's argument that the filing of her complaint with the EEOC interrupted prescription as to her Section 1983 claims is thus without merit. For purposes of Section 1983, Dillon had to file her complaint in federal court by April 30, 2017. She did not file it until February 1, 2018. The claims under Section 1983 are also untimely.

Dumas also asks the Court to dismiss Dillon's claim for retaliation against him. To establish a prima facie case of retaliation, plaintiff must show that (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Com'n*, 586 F. 3d 321 (5th Cir. 2009) (citing *Aryain v. Wal-Mart Stores Texas, L.P.*, 534 F. 3d 473 (5th Cir. 2008).

To constitute prohibited retaliation, an employment action must be "materially adverse," one that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). The purpose of this objective standard is "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace." *Id.* Even when an adverse action is intended by the employer as retaliation, it must still satisfy the materiality standard. *Id.* at 67-68.

Dumas contends that Dillon did not engage in protected activity with regard to him so her claim for retaliation must fail. Dumas argues that rejecting sexual advances does not constitute a protected activity. Dillon maintains that complaining about a supervisor's conduct may be considered protected activity for purposes of a retaliation claim. *See EEOC v. BOH Bros. Const. Co., L.L.C.*, 768 F. Supp. 2d 883, 894 (E.D. La. 2011). Here, Dillon alleges that she complained of Dumas's actions, and that her application for a work study and her appeal were denied as a result. She thus contends that she has asserted a valid claim for retaliation.

A protected activity is "opposition to any practice rendered unlawful by Title VII (or by analogy § 1983), including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The Fifth Circuit has held, however, that rejecting sexual advances, as alleged by Dillon here, does not constitute a protected activity for purposes of a retaliation claim. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007). Accordingly, this claims fails as well.

Because the Court has resolved the motions on the grounds of prescription, if need not address the other arguments raised by the Parish and Dumas.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Partial Dismissal [Doc. #5] and the Motion for Partial Dismissal of Plaintiff's First Amended Complaint [Doc. #17] are granted. Dillon's claims

under Title VII and corresponding Louisiana law and her claims under Section 1983 against the Parish are untimely.

**IT IS FURTHER ORDERED** that Defendant John Dumas' Rule 12(b)(6) Motion to Dismiss [Doc. #8] is granted.

New Orleans, Louisiana, this 29th day of June, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**