UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ZAKITA DILLON | CIVIL ACTION |
| VERSUS | NO. 18-967 |
| JEFFERSON PARISH, ET AL. | SECTION "N" (3) |

## ORDER

On October 10, 2018, the Motion to Dismiss Plaintiff's Retaliation and 42 U.S.C. § 1981 Claims [Doc. #34] came on for oral hearing before the undersigned. Present were Lou Anne Milliman on behalf of plaintiff and Christopher James-Lomax and Thomas Anzelmo on behalf of defendant. After the oral hearing, the Court took the motion under advisement. Having reviewed the case law and the pleadings, the Court rules as follows.

### I. Backgrounds

Plaintiff Zakita Dillon was an employee of the Parish of Jefferson ("the Parish"), working as an Executive Assistant for the Capital Projects division of the Public Works Department. [Doc. #1 at ¶ 4]. Defendant John Dumas was also an employee of the Parish, initially in the position of Human Resource Assistant Director, and later promoted to the position of Personnel Director. [*Id.* at ¶ 6]. As Personnel Director, Dumas had the power to promote, reprimand, and remove administrative officers and employees of the parish responsible to him. [*Id.*].

Dumas, in his capacity as Human Resource Assistant Director and Personnel Director, often had inappropriate interactions and communications with Dillon, which began to make her uncomfortable. [*Id.* at ¶ 7]. These communications included Dumas calling Dillon and asking what she was wearing and telling her that he saw her walk to her car and that he loved the dress she wore. [*Id.*].

After being promoted to Personnel Director, Dumas was given an office on the West Bank of Jefferson Parish. At that time, his interactions became more aggressive, informing Dillon that the promotion was bittersweet because he would not be able to see her "pretty face" every day. [*Id.*]. He also began to call her into his office when he traveled from the West Bank to the East Bank office locations. [*Id.*]. When she went into his office, he would hug her closely, which seemed innocent at first but progressed over time into an uncomfortable situation. [*Id.*]. Also, on one occasion, when Dillon had been called into Dumas's office, she sat down across from his desk in a chair and they began a casual conversation. [*Id.*]. Dumas then made a motion for Dillon to open her legs, and, when Dillon asked him what he was doing, he replied: "Do you have on underwear? I could just see me putting you on top of this desk. I just wanted to take a peep." [*Id.*]. Dillon jumped up and told him that she could not believe him and that she had tried to be nice about all of this and ignore his advances, but this was too much. [*Id.*]. Dillon consistently denied Dumas' sexual advances and attempted to limit any contact with him. [*Id.* at ¶ 8].

In April of 2015, plaintiff had applied for a work study program, through the Jefferson Parish Personnel Department. [*Id.* at ¶ 9]. This application was filed during the time period that she was denying the sexual advances of Dumas. [*Id.*]. The complaint alleges that it took almost fourteen months before Dillon's work study determination was made available to her, and it was denied in or about June of 2016. [*Id.*].

Dillon contacted Dumas concerning the lengthy time of evaluation for her work study, the denial, and inquired into the appeal process. [*Id.* at ¶ 10]. At that time, she was informed that there was no appeal process. [*Id.*]. Dillon then contacted her Councilman, Mark D. Spears, Jr., to inquire

about an appeal process. [*Id.*]. Following a meeting between Spears and Dumas, Dillon received notice that personnel had received her appeal. [*Id.*].

After receipt of the notice of appeal, Dillon was forced to again contact Dumas, in his capacity as Personnel Director, to inquire as to what documents and information would be needed from her in order to complete the appeal. [*Id.* at ¶11]. She also asked Dumas if she should attend. Dumas indicated that she should just forward any documents that she wanted reviewed, and her attendance was not necessary. [*Id.*]. She later found out that she could have and should have attended the Board Meeting when her appeal was addressed. [*Id.*].

On or about September 26, 2016, Dillon filed a grievance with Jefferson Parish in which she outlined the misconduct of Dumas. [*Id.* at ¶ 12]. Dillon avers that she has availed herself of the policies, procedures, and mediation process of the Equal Employment Opportunity Commission ("EEOC") without success. [*Id.* at ¶ 19]. Dillon was issued a Right to Sue Letter by the U.S. Department of Justice Civil Rights Division on or about November 27, 2017. [*Id.*].

Dillon sued Jefferson Parish and Dumas on February 1, 2018. The lawsuit alleges that defendants, the Parish, and Dumas, were acting under color of state and municipal law and were cloaked with the authority of the State of Louisiana and the Parish for purposes of 42 U.S.C. § 1983 when taking the actions against her. [*Id.* at ¶ 13]. The complaint alleges that defendants are liable for retaliation. [*Id.* at ¶¶ 14-15]. The complaint also alleges that this hostile work environment violated the Civil Rights Act of 1964, §§ 701 et seq., 703(a)(1), as amended, 42 U.S.C. §§ 2000e et seq., 2000e-2(a)(1). [*Id.* ¶ 16], and applicable Louisiana law.

Dillon alleges that she was acting within the requirements of her employment when she was retaliated against for denying the sexual advances of her supervisor, Dumas, as well as discriminated against because of her race and gender in violation of Title VII. Dillon alleges that Dumas is liable to her for compensatory damages, actual damages, emotional distress damages, attorney's fees, loss of earnings, punitive damages, and costs.

## II.     Law and Analysis

### A.     Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

### B.     Law and Analysis

#### 1.     Federal-law Claims

The Parish moves to dismiss Dillon's claim for retaliation under Title VII and her claim under 42 U.S.C. §1981, the only two claims remaining after this Court granted defendants' earlier motions to compel.  In Dillon's first amended complaint, she claims, in part, that the Parish

4

retaliated against her for denying the sexual advances of her supervisor, former defendant John Dumas. Particularly, Dillon suggests that the Parish retaliated against her by denying her work study request and subsequent appeal. Dillon also alleges that the Parish impaired her rights under 42 U.S.C. § 1981 when taking said retaliatory actions.

As noted, Dillon claims that the Parish retaliated against her for rejecting the sexual advances of her supervisor, former defendant John Dumas. The United States Court of Appeals for the Fifth Circuit has held that "to establish a *prima facie* case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Commn.*, 586 F.3d 321, 331 (5th Cir. 2009) As noted by this Court in its July 2, 2018 Order, [Doc. #33], a protected activity is "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).

The Fifth Circuit however, as also explained by this Court in its July 2, 2018 Order, has long held "that rejecting sexual advances, as alleged by Dillon here, does not constitute a protected activity for purposes of a retaliation claim." [Doc. #33 at p. 9]; *see LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007). Dillon cites the Court to the EEOC's definition of sexual harassment and argues that this Court owes great deference to the EEOC's definition. While this Court takes no issue with that definition, it is unavailing here as it only defines sexual harassment and does not address retaliation. And Dillon cites this Court to case law from the Sixth

and Eighth Circuits – in which the courts have held that rejecting sexual advances is a protected activity – and argues that the Fifth Circuit provided no legal analysis for its holding that such activity is not protected activity under Title VII. While that may be true, it is simply not the duty of this Court to question the Fifth Circuit as to how it reached its holding that such activity is simply not retaliation. As such, the Court finds that Dillon fails to state a plausible claim for relief for retaliation in her complaint as amended. The Court thus dismisses Dillon's claim for retaliation against the Parish with prejudice.

And with regard to Dillon's claim under Section 1981, "[t]he only provision allowing for a claim against a government entity for violation of the rights protected by § 1981 is § 1983." *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 463 (5th Cir. 2001); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (holding "that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"); *Oden*, 246 F.3d at 463 (recognizing that the Jett Court "declined to imply a cause of action under § 1981 independent of § 1983" as "Subsection (c) [of section 1981] addresses only substantive rights").

Further, it is well-established law that "Section 1981 grants a right of action against private actors, but not against local government entities." *Douglas v. O'Neal*, Civ. A. No. 17-808, 2018 WL 895863, at *7 (W.D. La. 2018), *report and recommendation adopted*, Civ. A. No. 17-808, 2018 WL 895710 (W.D. La. 2018); *see also Oden*, 246 F.3d at 463 (explaining that "Subsection

(c) [of section 1981] does not expressly create a remedial cause of action against local government entities").

In its earlier order granting defendants' motions for partial dismissal, this Court dismissed Dillon's Section 1983 claim. Thus, the only provision through which Dillon could assert a Section 1981 has been dismissed. Moreover, even were Dillon still in possession of a Section 1983 claim, she cannot sue Jefferson Parish – the only remaining defendant and a local government entity – under that statute. Accordingly, the Court also dismisses with prejudice Dillon' claim under Section 1981.[1]

**III. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss Plaintiff's Retaliation and 42 U.S.C. § 1981 Claims [Doc. #34] is GRANTED.

New Orleans, this 29th day of October, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] The Court notes that Dillon conceded the Parish's Section 1981 arguments at the oral hearing.